1

2

3

4              **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF NEVADA**
5                      **RENO, NEVADA**

6

7

JOAN R. MACK AS TRUSTEE OF THE      )      3:08-CV-370-ECR-RAM
8 PALACE JEWELRY & LOAN CO., INC.     )
401(k) PROFIT SHARING PLAN AND       )
9 TRUST                               )
                                     )
10      Plaintiff,                    )
                                     )
11 vs.                               )            **Order**
                                     )
12 RANDAL S. KUCKENMEISTER, CPA,      )
MST, as Administrator of the         )
13 Estate of Charla Marie Mack,       )
Deceased; DARREN ROY MACK, an        )
14 individual; and DOES 1 through 50, )
inclusive,                           )
15                                    )
        Defendants.                  )
16                                    )
                                     )
17 _____ )

18      In early 2006, Charla Mack and Defendant Darren Mack were in

19 the midst of an acrimonious divorce.  During the divorce

20 negotiations, Darren Mack agreed to transfer approximately $500,000

21 in a 401(k) plan to Charla Mack.  Before the state court entered any

22 order, however, Charla Mack suffered an untimely death at the hands

23 of her husband.  Darren Mack now claims that the retirement money is

24 his.  Defendant Randal Kuckenmeister, as administrator of Charla

25 Mack's estate, contends that the funds belong to the estate.

26 Plaintiff Joan Mack, as trustee of the 401(k) profit sharing plan

27 and trust, seeks to interplead the funds under Federal Rule of Civil

28 Procedure 22.  Joan Mack is also Darren Mack's mother.

1    For the reasons set forth below, we find that the state court
2  has already determined that the funds belonged to Charla Mack in its
3  nunc pro tunc order of June 20, 2007.  Plaintiff's claim is barred
4  by the doctrine of collateral estoppel, and the case should be
5  dismissed.

6

7                          **I. Background**

8    Defendant Darren Mack and Charla Mack were engaged in divorce
9  proceedings throughout 2005 and into the early part of 2006.  As
10 part of the divorce, Darren Mack agreed to execute a Qualified
11 Domestic Relations Order ("QDRO")[1] that would name Charla as the
12 alternate payee of a 401(k) plan.  The state court tasked Charla
13 Mack's attorney with writing an order to that effect for the court's
14 signature. (State Ct. Order, June 20, 2007, Ex. B at 2 (#11).)
15 Prior to the signing of the order, however, Darren Mack murdered
16 Charla and shot the state court judge who was presiding over the
17 proceedings. As a result, the state court did not enter the QDRO
18 before Charla's death.

19   After Charla's death, her estate moved for entry of an order in
20 Nevada state court that would, among other things, execute a QDRO to
21 transfer to Charla $500,000 plus interest.  The motion was granted,
22 and on June 20, 2007, the state court entered an order, nunc pro
23 tunc as of January 9, 2006 — a date when Charla was still alive —

24  _____

25      [1]A QDRO is a domestic relations order that "creates or recognizes
    the existence of an alternate payee's right to, or assigns to an
26  alternate payee the right to, receive all or a portion of the benefits
    payable with respect to a participant under a plan."  26 U.S.C. §
27  414(p)(1)(A)(I).

28                                2

stating that "a QDRO will be executed which will transfer to Mrs. Mack the sum of five hundred thousand dollars with any appreciation that is distributed to that five hundred thousand dollars." (Id.) Defendant Darren Mack has appealed that decision to the Nevada Supreme Court, where the decision is still pending.

Defendant Darren Mack contends that an estate cannot be named as a QDRO under Ninth Circuit law. As a result, he has threatened suit against the trustee of the 401(k) plan, Plaintiff Joan Mack, should she pay the benefit to Charla Mack's estate.

In light of the claims of Charla Mack's estate and Darren Mack's threatened legal action, Plaintiff filed a Complaint (#2) in federal court on July 7, 2008. She seeks to interplead the $500,000 in retirement money and prays for declaratory relief as to the rights and obligations of the parties with respect to the retirement funds in question.

Defendant Darren Mack answered (#9) the complaint and filed a Cross-claim (#9) against Defendant Kuckenmeister on July 30, 2008, seeking to claim the retirement funds for himself. Kuckenmeister filed a Motion to Dismiss (#22) the cross-claim on August 26, 2008, which Darren Mack opposed (#25) on September 12, 2008. Kuckenmeister filed a Reply (#27) on September 26, 2008.

Meanwhile, Kuckenmeister filed a Motion to Dismiss (#11) the original complaint on August 4, 2008, arguing that the issue had already been resolved by the state court and hence was barred by the doctrine of collateral estoppel. Both Plaintiff and Darren Mack filed Oppositions (## 20, 21) to Kuckenmeister's motion to dismiss

3

1   on August 22, 2008.  Kuckenmeister filed a Reply (#24) on September
2   5, 2008.

3   　　Both of Kuckenmeister's motions to dismiss (## 11, 22) are
4   ripe, and we now rule on them.

5

6   **II. Motion to Dismiss Standard**

7   　　A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be
8   granted if the complaint fails to "state a claim to relief that is
9   plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955,
10  1974 (2007).  On a motion to dismiss, "we presum[e] that general
11  allegations embrace those specific facts that are necessary to
12  support the claim."  Lujan v. Defenders of Wildlife, 504 U.S. 555,
13  561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889
14  (1990)) (alteration in original).  Moreover, "[a]ll allegations of
15  material fact in the complaint are taken as true and construed in
16  the light most favorable to the non-moving party."  In re Stac
17  Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation
18  omitted).

19  　　Although courts generally assume the facts alleged are true,
20  courts do not "assume the truth of legal conclusions merely because
21  they are cast in the form of factual allegations."  W. Mining
22  Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly,
23  "[c]onclusory allegations and unwarranted inferences are
24  insufficient to defeat a motion to dismiss."  In re Stac Elecs., 89
25  F.3d at 1403 (citation omitted).

26  　　Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is
27  normally limited to the complaint itself.  See Lee v. City of L.A.,

28                                  4

250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond.  Fed. R. Civ. P. 12(b); see <u>United States v. Ritchie</u>, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment."  <u>Ritchie</u>, 342 F.3d at 908.

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them."  <u>Lee</u>, 250 F.3d at 688 (citation, internal quotations and ellipsis omitted).  A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim."  <u>Ritchie</u>, 342 F.3d at 908.  Finally, if adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss.  <u>Id.</u> at 909; see Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### III. Motion to Dismiss (#11)

Kuckenmeister avers that the issue Plaintiff seeks to resolve — what to do with the retirement funds — has already been decided and is thus precluded from being litigated again.  Plaintiff contends that the issue now before the Court is not what to do with the retirement funds, but whether an estate may be named as an alternate payee by a QDRO.  Defendant Darren Mack likewise argues that it is improper under the Employee Retirement Income Security Act to transfer funds to an estate, and hence a different issue is raised before this Court than what was before the state court.

The preclusion doctrines may be raised in a Rule 12(b)(6) motion.  See Maldonado v. Harris, 370 F.3d 945, 951-52 (9th Cir. 2004) (reviewing claim preclusion on a motion to dismiss).  When a party asserts the preclusive effect of a state court judgment, 28 U.S.C. § 1738 requires that a federal court give a state court judgment the same full faith and credit as that judgment would receive under the law of the state in which the judgment was rendered.  Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 84 (1984); Albano v. Norwest Fin. Haw., Inc., 244 F.3d 1061, 1063 (9th Cir. 2001).[2]

Collateral estoppel, or issue preclusion, "forecloses relitigation of factual or legal issues that have been actually and

---

[2]A state court judgment may be considered without converting the motion to dismiss to a motion for summary judgment.  See In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996) ("[A]mple authority exists which recognizes that matters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue, may be looked to when ruling on a 12(b)(6) motion to dismiss.").

necessarily decided in earlier litigation." <u>San Remo Hotel, L.P. v.</u>
<u>S.F. City & County</u>, 364 F.3d 1088, 1094 (9th Cir. 2004).  Under
Nevada law, which has been clarified since the parties submitted
their briefs, there is a four-part test for determining whether
issue preclusion applies: (1) "the issue decided in the prior
litigation must be identical to the issue presented in the current
action; (2) the initial ruling must have been on the merits and have
become final; (3) the party against whom the judgment is asserted
must have been a party or in privity with a party to the prior
litigation; and (4) the issue was actually and necessarily
litigated." <u>Five Star Capital Corp. v. Ruby</u>, 194 P.3d 709, 713
(Nev. 2008) (internal quotation marks, ellipsis, and footnote
omitted).

First, Plaintiff's complaint makes it clear that the issue to
be decided in this case is the same issue that was decided in the
prior state court action.  Plaintiff's complaint seeks to interplead
the $500,000 and prays for this Court to adjudge the rights of the
various parties with respect to those retirement funds.  This issue
is precisely what the state court decided in its order of June 20,
2007.

Defendant Darren Mack's contention that the issue before this
Court is whether a QRDO can transfer benefits to an estate is not
well taken.  The state court's order was issued <u>nunc pro tunc</u> as of
January 9, 2006, when Charla Mack was still alive.  Thus, for
present purposes, it is as though the state court QDRO was entered
when Charla Mack was alive and then she subsequently passed away.
The estate would then receive the benefits, not because the QDRO was

7

1  entered for the estate, but because the QDRO is deemed to have been
2  entered for Charla Mack before she died.

3       Next, the initial ruling was final and on the merits.  The
4  state court order makes it clear that the order was entered only
5  after considerable motion practice, lengthy negotiations, multiple
6  hearings, and at least two agreements entered on the record.  (State
7  Ct. Order, June 20, 2007, Ex. B at 2 (#11).)  Moreover, the state
8  court, in issuing its order nunc pro tunc, took great care to limit
9  its order to what the record showed that the court had decided
10 already.  (Id. at 3.)  The court determined that the state court
11 judge "intended his pronouncement [of January 9, 2006,] to be a
12 binding order."  (Id. at 4.)  The order included a provision
13 requiring that a QDRO be executed that would transfer $500,000 to
14 Charla Mack.  Thus, the initial ruling was final and on the merits.

15      Relatedly, the fourth factor — that the issue was necessarily
16 and actually litigated — is met.  Certainly the issue was "actually"
17 litigated — a state court ordered that a QDRO be executed with
18 respect to the funds in question after a full hearing on the merits.
19 Further, resolution of the issue was, by definition, necessary: the
20 state court could not order the execution of a QDRO without deciding
21 whether or not to issue a QDRO.  In short, the issues of the
22 retirement funds and the validity of the QDRO were essential to the
23 state court's decision.

24      The parties disagree about the third factor: whether the
25 parties involved in the dispute are the same.  Clearly, both Charla
26 Mack and Darren Mack were involved in the divorce proceedings and
27 were covered by the state court order.  Plaintiff argues that she

28                                    8

brings this claim as the trustee of the retirement plan, not as Darren Mack's mother, and that her interests as trustee were not represented in the state court proceedings.  As a result, she avers that she was not a party to the dispute, and thus the doctrine of collateral estoppel does not apply.  Kuckenmeister contends that there is a sufficient nexus between Plaintiff's interests, as trustee of the retirement plan, and Darren Mack's interests in the divorce proceedings such that the parties are in privity.

It is Plaintiff's status as trustee of the retirement plan that leads us to conclude that Plaintiff's interests were sufficiently represented in the state court proceedings.  Plaintiff seeks to interplead the $500,000 so that the proper party will receive the funds.  Plaintiff, as trustee, has no independent interest as to which party — Charla Mack or Darren Mack — receives the retirement funds.  Plaintiff's only interest is in insuring that she pays the funds to the appropriate party.  The state court heard extensive arguments between Charla Mack and Darren Mack as to who should receive the funds, and the state court ruled in favor of Charla Mack.  Thus, Plaintiff's interests were represented in the state court proceedings when the state court determined to execute the QDRO in favor of Charla.

## IV. Motion to Dismiss (#22)

Defendant Darren Mack's cross-claim (#9) disputes the validity of the QDRO and asserts that the retirement funds in question were merely "the subject of settlement proceedings between the parties to the divorce."  (D.'s Answer and Cross Claim ¶ 10 (#9).)  Further,

9

1 Darren Mack alleges that the "divorce court made no decision of fact
2 in the divorce prior to the decedent's death." (Id. ¶ 11.)
3 Finally, Darren Mack alleges that the state court's nunc pro tunc
4 order was improper, and hence he, and not Charla Mack or her estate,
5 should receive the proceeds of the retirement plan.

6     Kuckenmeister moves to dismiss (#22) the cross-claim on the
7 grounds that the issue before the Court has already been decided by
8 the state court's nunc pro tunc order.  For the reasons discussed in
9 Kuckenmeister's other motion to dismiss (#11), we find that Darren
10 Mack's cross-claim is barred by the doctrine of collateral
11 estoppel.[3]
12 //
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20
21
22

_____

23     [3]We also note that Darren Mack concedes that the issues raised
in the cross claim have been litigated previously.  In his answer, he
24 admits that on June 20, 2007, the state court entered a QDRO for
payment of $500,000 to Charla Mack, nunc pro tunc as of January 9,
25 2006.  (D.'s Answer ¶ 11 (#9).)  While he challenges the correctness
of the state court's decision — that the QDRO was valid — he does not
26 dispute that the state court decided the issue.  This Court does not
sit as an appellate court of a state court's decision.  Even if Darren
27 Mack sought to challenge the state court's decision, the
Rooker/Feldman doctrine would bar the Court from entering the fray.

28

## **V. Conclusion**

The elements of collateral estoppel under Nevada law have been met: the issues that Plaintiff and Defendant Darren Mack seek to litigate have already been decided by a state court.

**IT IS THEREFORE HEREBY ORDERED THAT** Defendant Randal S. Kuckenmeister's Motion to Dismiss (#11) is **GRANTED.**

**IT IS FURTHER ORDERED THAT** Defendant Randal S. Kuckenmeister's Motion to Dismiss Co-Defendant Darren Roy Mack's Cross-Claim (#22) is **GRANTED.**

The Clerk shall enter judgment accordingly.

DATED: JANUARY __22__ , 2009.

_Edward C. Reed._
UNITED STATES DISTRICT JUDGE

11